IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| The Inclusive Communities Project, Inc., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | No. |
| | * | |
| Heartland Community Association, Inc. | * | |
| | * | |
| Defendant. | * | |
| | * | |

**Complaint**

**Introduction**

1. Heartland Community Association, Inc. (HCA) is a non-profit property owners' association given the authority to enact and enforce rules and regulations for Heartland, Texas (Heartland). Heartland, Texas is a large single family development located in an unincorporated area of Kaufman County, Texas. Heartland is majority White non-Hispanic by both population and by head of household. HCA enacted a rule prohibiting the use of any rental property in Heartland for any publicly financed or subsidized rental housing program including Housing Choice Vouchers. The rule became effective March 19, 2018.

2. The Inclusive Communities Project's (ICP) voucher clients seek ICP's assistance to find and obtain dwelling units in safe and secure communities with higher median incomes, good schools, low poverty rates, and adequate public and private services and facilities (high opportunity areas). ICP has assisted federal voucher program participants locate and rent homes in Heartland, Texas. ICP's clients are current residents of Heartland.

3. As a result of the HCA rule banning vouchers from Heartland, the existing voucher

families will eventually be excluded from Heartland. No new voucher families will be allowed to rent in Heartland. ICP will have to spend its money and staff time assisting its voucher clients find homes in other high opportunity areas. ICP brings this lawsuit to prevent the racially discriminatory rule banning vouchers from injuring its clients and ICP.

**Jurisdiction**

4. The Court has jurisdiction pursuant to 42 U.S.C. § 3613(a)(1)(A) and 28 U.S.C. § 1331.

**ICP**

5. Plaintiff The Inclusive Communities Project, Inc. (ICP) is a fair housing focused non-profit organization working with households seeking access to housing in predominately non-minority locations in the Dallas area. As part of its mission, ICP provides counseling, financial assistance, and other services to Black or African American households participating in the Section 8 Housing Choice Voucher (HCV or voucher) Program administered by the Dallas Housing Authority (DHA).

6. 85% of the DHA voucher participants are Black or African American according to United States Department of Housing and Urban Development (HUD). ICP assists DHA voucher households who choose to lease dwelling units in non-minority areas with counseling and financial assistance. ICP also operates its sublease/guarantor program for its clients. ICP's office is located in the City of Dallas, Dallas County, Texas. ICP's clients are predominantly Black or African American. ICP's clients are predominantly families with children.

7. The federal voucher program provides a subsidy to landlords willing to rent units to very low income and extremely low income households with a voucher. The subsidy pays the

difference between the contract rent and the amount the voucher households are required to pay. Voucher households pay between 30% and 40% of their income as their share of the rent. 42 U.S.C. § 1437f(o).

8. The voucher families in Heartland pay 30% to 40% of their income for their share of the rent. HUD reports that the voucher families in the Heartland census tract have an average median household income of $18,791. Wages are a major source of income for 43% of the households and 43% of the households have incomes of $20,000 or more.

9. ICP is organized to work for the creation and maintenance of thriving racially and economically inclusive communities, expansion of fair and affordable housing opportunities for low income families, and redress for policies and practices that perpetuate the harmful effects of discrimination and segregation. ICP operates to create and obtain affordable housing in non-minority concentrated areas within the Dallas metropolitan area for persons eligible for low income housing including voucher households. This includes, among other means, providing the counseling and other forms of assistance to voucher households seeking to utilize their housing choice voucher to move into those areas.

10. ICP focuses its housing mobility counseling and financial assistance resources on helping households find housing in higher opportunity areas with lower poverty rates, higher median family income, and higher ranking public schools. Heartland is in a high opportunity area. Heartland provides ICP's client with affordable housing in a safe neighborhood with good schools and other amenities.

11. ICP's assistance to its DHA voucher clients is part of the remedy in the *Walker v. HUD* public housing desegregation case. The U.S. Court of Appeals for the Fifth Circuit

recommended a desegregation plan to remedy the intentional segregation of public housing and Section 8 vouchers by the federal government, the City of Dallas, and the Dallas Housing Authority. The plan included a housing voucher mobility program. The Fifth Circuit held that this remedy should include more vouchers and a vigorous mobility program that served the Black voucher households wishing to move out of the segregated areas. *Walker v. City of Mesquite*, 169 F.3d 973, 985, 987-988 (5th Cir. 1999), *cert. denied*, 528 U.S. 1131 (2000). The United States District Court adopted the housing mobility program as part of the remedy. ICP has been providing housing mobility services to its DHA voucher clients since 2005.

12. The mobility assistance is necessary because of the limited number of landlords willing to rent units in majority White non-Hispanic neighborhoods to voucher families. The unit and neighborhood choices usually available to voucher clients without mobility assistance are racially segregated areas marked by unequal neighborhood living conditions.

13. ICP's clients residing in Heartland are *Walker* class members. ICP's clients residing in Heartland include those using the Walker Settlement Vouchers from the *Walker* remedy.

14. The housing mobility assistance given by ICP to DHA voucher participants begins with providing mobility counseling information to the voucher participants as they attend DHA's mandatory voucher briefings. After the briefings, ICP provides additional mobility assistance as requested by the households who want to make and sustain a move to a high opportunity area. This help includes pre-move mobility counseling and related financial assistance. The housing mobility assistance also includes negotiating with landlords as necessary to obtain units in the eligible areas at rents that are affordable by the voucher households and eligible for the voucher subsidy. The financial assistance ICP provides to these households may include the payment of

application fees and security deposits to assist households moving into housing that provides opportunities in non-predominantly minority, non-poverty concentrated areas. ICP can also make landlord incentive bonus payments to landlords in areas that provide housing opportunities in non-predominantly minority, non-poverty concentrated areas who agree to participate in DHA's voucher program. ICP makes these payments when it determines that such incentives are necessary to secure housing for the voucher households. For example, ICP may provide a reasonable bonus payment to a landlord if it is necessary to obtain a rent concession in order for a unit to be eligible for voucher assistance at a rent affordable to the family or if the bonus payment is necessary to convince a landlord to participate in DHA's voucher program.

15. ICP also offers landlords in high opportunity areas the option of contracting with ICP to serve either as a guarantor for DHA voucher households or as the sublessor for DHA voucher households. Each of these contractual alternatives may include a landlord incentive bonus paid by ICP.

**Defendant**

16. Heartland Community Association, Inc. (HCA) is a non-profit property owners' association with the authority to enact and enforce rules and regulations for Heartland, Texas (Heartland). Heartland is a single family development located in an unincorporated area of Kaufman County, Texas. There are no multifamily units in the development. The development is within the extra-territorial jurisdiction of the City of Crandall, west of Talty, and south of Forney. The City of Crandall provides police and fire protection for the development. Several Municipal Utility Districts provide water and sewer utilities to the development.

17. Heartland is majority White non-Hispanic by both population and by head of

household.

18. A website for the Heartland development indicates that the homes are "From the $190s to $300s". http://www.heartlandtexas.com/. The 2011-2016 U.S. Census American Community Survey statement of median home value for the census tract block group in which the development is located is $147,200. The 2011-2016 U.S. Census American Community Survey statement of median home value for the Dallas Metropolitan Division is $173,500.

19. The Federal Financial Institutions Examination Council 2014 - 2016 Home Mortgage Disclosure Act data for the census tract for the development states 643 of the 1,408 home loans in the census tract were FHA, VA, or other federal government assisted mortgages.

20. The houses available in Heartland for rental to the voucher households are the modest, non-luxury dwellings with suitable amenities that are eligible for the voucher program.

21. The deed restrictions and covenants applying to each property in Heartland set out HCA's authority to enact and enforce rules and regulations governing the use of each single family home property. Until March 19, 2018, there was no rule prohibiting rental of a residence to a voucher family. Leasing of any unit was expressly allowed. HCA enacted the Rule prohibiting the use of any rental property in Heartland for a publicly financed or subsidized housing program effective March 19, 2018.

22. The challenged portion of the Rule is stated as one of three required qualifications for a tenant: i) a verifiable rental history with no evictions, ii) no use of a rental property for a publicly financed or subsidized housing program, such as Section 8 Housing, and iii) no registered sex offenders. The Rule is in the Tenth Supplemental Certificate and Memorandum of Recording of Dedicatory Instruments for Heartland Community Association, Inc. The Rule

states:

> 1.5.5. OWNER'S DUTY TO QUALIFY TENANTS. The Association does not process rental applications or screen or approve tenants. The purpose of this Section is to establish minimum criteria by which the Owner of a Rental Property must qualify tenants and any other occupants of the Owner's Rental Property.
> 1.5.5.1 Positive Rental History. Adult occupants of a Rental Property must have at least one year current and verifiable residential rental history, and no history of evictions.
> 1.5.5.2 No Section 8 Housing. A Rental Property may not be used for a publicly financed or subsidized housing program, such as Section 8 Housing.
> 1.5.5.3 No Sex Offenders. No occupant of any Rental Property may be a person who has been convicted of a sex crime (1) that involved a victim who was less than 16 years of age at the time of the sex crime, and (2) which requires the person to register on the Texas Department of Public Safety's Sex Offender Database. A sex offender who was a minor when he committed the offense and who was not convicted as an adult, is exempt from the application of this Section.

23. The specific provision of 1.5.5. challenged is Section 1.5.5.2 No Section 8 Housing.

24. The voucher families are not affected by the other two sections, § 1.5.5.1. and § 1.5.5.3. The voucher families' tenant histories, credit reports, and criminal records have already been found satisfactory by the landlord. The voucher families are not even eligible for a federal voucher if they are registered sex offenders or have other disqualifying criminal records. 24 C.F.R. § 982.552(a)(2)(i); 24 C.F.R. § 982.552(a).

**Standing**

25. ICP meets the Fair Housing Act definition of an aggrieved person. 42 U.S.C. § 3602(i). ICP has been injured by Defendant's discriminatory housing practice and will be injured in the future by the practice.

26. ICP's mission is directly connected to the provision of racially integrated housing opportunities and the elimination of racial segregation. The creation of racially integrated housing opportunities and the elimination of racial segregation are purposes of the Fair Housing

Act, 42 U.S.C. § 3601.

27. ICP's ability to assist its voucher clients in obtaining dwellings in high opportunity areas is obstructed by Defendant's discriminatory housing practices. For each unit made unavailable by Defendant's discrimination, ICP must use additional time and resources to find another unit for its voucher clients. There is widespread refusal to rent to voucher households by multifamily landlords with units in high opportunity areas. This lack of available multifamily units in high opportunity areas increases ICP's clients' and other voucher families' need for single family units in high opportunity areas. Defendant's Rule will make 90 or more single family units in Heartland unavailable for ICP's clients. These 90 units are a small percentage of the approximately 2,000 homes in Heartland.

28. When the voucher client is unable to obtain a unit outside of the racially concentrated areas of high poverty, ICP's resources for the mobility counseling efforts on behalf of the voucher client have been expended without furthering ICP's racial integration and desegregation purposes.

29. ICP has a close, essentially representative relationship with its clients. It acts as their agent in locating integrated rental housing and negotiating housing terms. ICP acts as the clients' representative in advocacy involving individual matters with the housing authority. It also acts as the clients' representative in advocacy involving institutional issues such as the amount of the fair market rent that can be paid in the Housing Choice Voucher Program. ICP is an integral part of its clients' exercise of their housing-related protections under the civil rights laws. ICP's actions assisting its clients in obtaining racially integrated housing is within the zone of interests of the Fair Housing Act.

**Facts**

30. ICP has assisted numerous voucher households in obtaining rental homes in Heartland, Texas. ICP has been assisting voucher household clients move to Heartland since 2013. Some of the clients have moved from their initial rental home in Heartland to a different home in Heartland. ICP has additional clients for whom a rental home in Heartland would be their preferred choice.

31. ICP has spent money and staff time to assist its clients to locate in Heartland. ICP will have to spend more money and more staff time to help its clients relocate when their landlords decide not to renew the leases because of the coercive effects of the Rule or when landlords refuse to accept voucher tenants because of the Rule. The landlords with multiple rental properties will have to sell those properties and in the process end the tenancies of ICP's clients. This will be the direct result caused by the coercive effect of the Rule.

32. The Rule prohibits the extension of voucher leases if the occupants change from the current lease. If there is a child added to the household or a child that leaves the household, the lease cannot be extended because the occupants have changed.

33. The Rule eliminates a source of landlords willing to rent to ICP's voucher clients for future ICP clients. ICP will have to spend more money and more staff time to find additional landlords willing to rent to ICP's voucher clients.

34. The Rule directly classifies voucher participants as undesirable tenants. The Rule prohibits three types of renters: registered sex offenders, tenants with a history of evictions, and voucher participants. The Rule is an additional cause that reinforces the unjustified stigma on voucher families that ICP's counselors have to counter when assisting its voucher clients in their

housing search.

35. The presence of voucher tenants in Heartland has not reduced property values or owner equity, threatened the owner occupied character of the community, lowered community participation in civic affairs, threatened the continuity of community values, imparted the character of a renter occupied development, or diminished the eligibility of residents for mortgage financing.

**The Rule has a disparate impact on a disproportionately Black or African American population**

36. The Rule has an adverse impact on two disproportionately Black groups - the existing voucher residents in Heartland and the future voucher households prevented from moving to Heartland.

**The Rule has a disparate impact on the existing voucher residents in Heartland**

37. The Rule adversely affects the existing voucher participants residing in Heartland. HUD reports that the voucher residents in the Heartland census tract are 99% Black or African American. The Rule causes the exclusion of this group of Black or African American households. The Rule causes the exclusion of the voucher group by its coercive effect on landlords. The Rule causes the exclusion of the current voucher group by expressly limiting the terms upon which an existing voucher lease can be renewed to households for which there is no change in occupants. The Rule causes the exclusion of the current voucher group by its effect causing landlords to sell the properties currently being leased to voucher tenants rather than continue to own a unit that cannot be leased to another voucher resident once the current voucher occupant no longer leases the unit.

38. None of the White non-Hispanic renters in Heartland are adversely affected by the

-10-

Rule. None of the White non-Hispanic renters in Heartland are voucher households. All of the voucher households in Heartland are adversely affected by the Rule. 99% of the voucher residents are Black or African American. The disparity is substantial.

**The Rule has a disparate impact on the voucher households excluded from renting homes in Heartland**

39. The Rule adversely affects the disproportionately Black or African voucher participants under the DHA voucher program. HUD reports that 85% of the DHA voucher participants are Black or African American and 6% of DHA voucher participants are White non-Hispanic. DHA reports that 83% of the DHA voucher program waiting list is Black or African American. 12% of the DHA voucher program waiting list is White non-Hispanic. Landlords who rent to future voucher households will be subject to fines and lawsuits until the voucher households are removed from the rental property. This coercive effect will prevent landlords from renting to voucher households.

40. The disparate impact is shown by the comparison between the percentage of Black renter households who use Section 8 vouchers versus the percentage of White non-Hispanic renter households who use vouchers.

41. Black voucher households in the Dallas Metropolitan Division are 14% of all Black renter households.[1] White non-Hispanic voucher households are 1% of all White non-Hispanic renter households in the Dallas Metropolitan Division. The exclusion of voucher households impacts a substantially higher percentage of Black renter households compared to White non-

---

[1] The Dallas Metropolitan Division refers to the U.S. Census Dallas-Plano-Irving, TX Metropolitan Division geographic area that includes seven counties: Collin, Dallas, Denton, Ellis, Hunt, Kaufman, and Rockwall.

Hispanic renter households.

42. The exclusion of voucher households prevents rentals by a group that is substantially more Black than it is White non-Hispanic. HUD reports that 77% of the Dallas Metropolitan Division voucher households are Black or African American and 14% are White non-Hispanic. The Dallas Metropolitan Division renter households are 25.8% Black and 39.7% White non-Hispanic.

43. The population that remains eligible to rent units in Heartland are the renter households with incomes that are 80% or greater than HUD Area Median Family Income (HAMFI) for the Dallas Metropolitan Division. HUD data shows 32% of all Black renter households in the Dallas Metropolitan Division have incomes greater than 80% of HAMFI. By comparison, 53% of all White non-Hispanic renter households in the Dallas Metropolitan Division, have incomes greater than 80% of HAMFI. The disparity is substantial.

44. The facts show a prima facie case of disparate impact liability.

**The Rule violates the disparate treatment liability standard**

45. The voucher families seeking to remain in Heartland are all Black or African American. Until the Rule was enacted, the families were qualified to rent their housing units. The Rule will make these families unqualified to lease homes in Heartland. Voucher clients have already passed voucher eligibility requirements. This includes showing: a) they are not registered sex offenders; b) the absence of criminal records; c) no evictions because of drug related activity or criminal activity, and d) satisfying other requirements.

46. The Rule will leave rental homes available for lease by a disproportionately White non-Hispanic population.

47. The population that remains eligible to rent units in Heartland are the renter households with incomes that are 80% or greater than the HUD Area Median Family Income (HAMFI). HUD data shows 32% of all Black renter households in the Dallas Metropolitan Division have incomes that are greater than 80% of HAMFI.  By comparison, 53% of all White non-Hispanic renter households in the Dallas Metropolitan Division have incomes greater than 80% of HAMFI. The disparity is substantial.

48. The Rule will exclude the Black or African American voucher population from a majority White non-Hispanic area.

49. The facts show a prima facie case of disparate treatment liability.

**The Defendant refused to negotiate on alternatives to the Rule or to state the reasons served by the Rule**

50. ICP wrote HCA pointing out the HCA Rental Amendment Questions and Answers for the Rule did not state any reasons for the ban on renting to voucher households. ICP asked the reasons for HCA's ban on renting to tenants on a publicly financed or subsidized housing program including the voucher program. ICP also asked for the opportunity to discuss the ban on voucher households with the HCA. ICP suggested that if HCA would state the reasons for the ban, there could be alternative ways to address those reasons. The only response was a call to ICP's President Demetria McCain from an attorney for HCA. No reasons for the voucher exclusion were given and no alternatives were discussed.

**Claim for relief**

51. Defendant's Rule makes dwelling units unavailable to voucher households because of race or color and violates 42 U.S.C. § 3604(a).

**Prayer for relief**

Plaintiff requests the following relief:

a) an injunction prohibiting HCA from enforcing Rule 1.5.5.2. prohibiting the use of a publicly financed or subsidized housing program such as Section 8 housing for a rental property;

b) a declaratory judgment that Rule 1.5.5.2. prohibiting the use of a publicly financed or subsidized housing program such as Section 8 housing for a rental property violates 42 U.S.C. § 3604(a);

c) a declaratory judgment that Rule 1.5.5.2. banning a publicly financed or subsidized housing program such as Section 8 housing is void;

d) an injunction requiring HCA to amend its Rules and Regulations by eliminating Rule 1.5.5.2. and filing the amended dedicatory instrument with Rule 1.5.5.2. eliminated;

e) an award of attorney fees, litigation expenses, court costs, and

f) any other appropriate relief.

Respectfully Submitted,

/s/ Michael M. Daniel
Michael M. Daniel
State Bar No. 05360500
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: daniel.michael@att.net
Attorney for Plaintiff

Laura B. Beshara
State Bar No. 02261750
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: laurabeshara@swbell.net
Attorney for Plaintiff